## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MATTHEW HOPKINS, | : |
| | : Case No. _____ |
| Plaintiff, | : |
| | : <u>JURY TRIAL DEMANDED</u> |
| v. | : |
| | : **COMPLAINT FOR VIOLATION OF THE** |
| WELBILT, INC., CYNTHIA M. | : **SECURITIES EXCHANGE ACT OF 1934** |
| EGNOTOVICH, DINO J. BIANCO, JOAN | : |
| K. CHOW, JANICE L. FIELDS, BRIAN R. | : |
| GAMACHE, WILLIAM C. JOHNSON, and | : |
| ANDREW LANGHAM, | : |
| | : |
| Defendants. | : |

Plaintiff, by his attorneys, for this complaint against defendants, alleges the following upon personal knowledge with respect to himself, and upon information and belief based upon the investigation of counsel as to all other allegations herein:

### NATURE OF ACTION

1.     On July 14, 2021, Welbilt, Inc. ("Welbilt" or the "Company") entered into an agreement and plan of merger (the "Merger Agreement") with Ali Holding S.r.l. ("Parent"), Ali Group North America Corporation ("Acquiror"), and Ascend Merger Corp. ("Merger Sub," and together with Parent and Acquiror, "Ali") (the "Proposed Merger").

2.     Under the terms of the Merger Agreement, Welbilt's stockholders will receive $24.00 in cash per share.

3.     On August 31, 2021, defendants filed a proxy statement (the "Proxy") with the U.S. Securities and Exchange Commission (the "SEC").

4.     As alleged herein, the Proxy fails to disclose material information regarding the Proposed Merger, and defendants violated Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act").

## JURISDICTION AND VENUE

5.      This Court has jurisdiction over the claims asserted herein pursuant to Section 27 of the Exchange Act because the claims asserted herein arise under Sections 14(a) and 20(a) of the Exchange Act and Rule 14a-9.

6.      This Court has jurisdiction over defendants because each defendant is either a corporation that conducts business in and maintains operations within this District, or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7.      Venue is proper under 28 U.S.C. § 1391(b) because a portion of the transactions and wrongs complained of herein occurred in this District.

## THE PARTIES

8.      Plaintiff is and has been continuously throughout all relevant times the owner of Welbilt common stock.

9.      Defendant Welbilt is a Delaware corporation. Welbilt's common stock is traded on the New York Stock Exchange under the ticker symbol "WBT."

10.     Defendant Cynthia M. Egnotovich is Chairperson of the Board of Directors of Welbilt (the "Board").

11.     Defendant Dino J. Bianco is a member of the Board.

12.     Defendant Joan K. Chow is a member of the Board.

13.     Defendant Janice L. Fields is a member of the Board.

14.     Defendant Brian R. Gamache is a member of the Board.

15.     Defendant William C. Johnson is President, Chief Executive Officer, and a member of the Board.

16.     Defendant Andrew Langham is a member of the Board

17.     Defendants identified in ¶¶ 10-16 are referred to herein as the "Individual Defendants."

## SUBSTANTIVE ALLEGATIONS

18.     Welbilt provides the world's top chefs, premier chain operators, and growing independents with industry-leading equipment, and solutions.

19.     On July 14, 2021, Welbilt entered into the Merger Agreement.

20.     The press release announcing the Proposed Merger provides as follows:

Ali Holding S.r.l. ("Ali Group"), one of the largest and most diversified global leaders in the foodservice equipment industry, and Welbilt, Inc. (NYSE:WBT) today announced that they have entered into a definitive merger agreement under which Ali Group will acquire Welbilt in an all-cash transaction for $24.00 per share, or approximately $3.5 billion in aggregate equity value and $4.8 billion in enterprise value. The merger agreement has been unanimously approved by the boards of directors of both companies.

"We are pleased to announce this agreement with Welbilt and look forward to combining our highly complementary brands to create a comprehensive product portfolio and enhance our global footprint," said Filippo Berti, Ali Group Chairman and Chief Executive Officer. "We have long admired Welbilt's heritage, breadth of products, brand strength and management team, and together we will have an expanded range of innovative products. The transaction marks a significant milestone in Ali Group's history and will position us to better serve our customers and capitalize on attractive growth opportunities. We are excited to welcome Welbilt and its employees to the Ali Group family as we strengthen our global presence and continue to build on our culture of quality and innovation."

"We are excited to reach this agreement with Ali Group, which delivers outstanding value to Welbilt shareholders, provides new opportunities for Welbilt employees and enables Welbilt to benefit from the expertise and resources of Ali Group," said Bill Johnson, Welbilt's President and Chief Executive Officer. "This transaction provides a compelling and certain cash value to Welbilt shareholders at an attractive premium and will create a global leader in the foodservice equipment and solutions industry with a full range of connectable foodservice solutions for our customers. I want to thank each of our employees for their hard work and dedication to the success of Welbilt, which has positioned us to reach this agreement today. On behalf of the Welbilt Board and management team, we are excited to work closely with Filippo and the Ali Group team as we bring our companies together."

In addition, Carl C. Icahn (and affiliates), who owns 7.7% of Welbilt stock, has entered into a support agreement in favor of the transaction.

Approvals and Timing

The transaction, which is not conditioned on financing, is expected to close in early 2022, subject to the satisfaction of customary closing conditions, including the approval of Welbilt shareholders. Upon completion of the transaction, Welbilt's shares will no longer trade on The New York Stock Exchange.

Welbilt today also confirmed that it has terminated the previous merger agreement entered into with The Middleby Corporation ("Middleby") on April 20, 2021. Per the terms of the Middleby merger agreement, Ali Group has paid Middleby a $110 million termination fee on Welbilt's behalf as agreed to in the Ali Group merger agreement. In light of the termination of the agreement with Middleby, Welbilt is cancelling its July 21, 2021, special stockholder meeting to approve the Middleby transaction. Welbilt expects to announce a special stockholder meeting to approve the Ali Group transaction at a later date.On August 6, 2021, defendants filed the Proxy, which fails to disclose material information regarding the Proposed Merger.

Advisors

Goldman Sachs & Co. LLC has acted as Ali Group's exclusive financial advisor with financing provided by Goldman Sachs International and Mediobanca, and Alston & Bird is acting as legal advisor. Morgan Stanley & Co. LLC is serving as exclusive financial advisor to Welbilt, and Gibson, Dunn & Crutcher LLP is serving as legal counsel.

21.    Defendants filed the Proxy with the SEC in connection with the Proposed Merger.

<u>Financial Projections</u>

22.    The Proxy fails to disclose material information regarding Welbilt's financial projections.  The disclosure of projected financial information is material because it provides stockholders with a basis to project the future financial performance of a company, and allows stockholders to better understand the financial analyses performed by the company's financial advisor in support of its fairness opinion.

23.    The Proxy fails to disclose: (i) projected net income; and (ii) the line items used to calculate the financial projections.

<u>Financial Analyses</u>

24.     The Proxy fails to disclose material information regarding the financial analyses conducted by Morgan Stanley & Co. LLC ("Morgan Stanley").  When a banker's endorsement of the fairness of a transaction is touted to shareholders, the valuation methods used to arrive at that opinion as well as the key inputs and range of ultimate values generated by those analyses must also be fairly disclosed.

25.     Regarding Morgan Stanley's Discounted Cash Flow Analysis, the Proxy fails to disclose: (i) the terminal values; and (ii) the inputs and assumptions underlying the discount rates and terminal growth rates utilized by Morgan Stanley.

26.     Regarding Morgan Stanley's Discounted Equity Value Analysis, the Proxy fails to disclose: (i) the basis for selecting the multiples utilized by Morgan Stanley; and (ii) the inputs and assumptions underlying the discount rate utilized by Morgan Stanley.

27.     Regarding Morgan Stanley's Discounted Analysts' Future Price Targets analysis, the Proxy fails to disclose: (i) the price targets observed by Morgan Stanley; (ii) the sources of the price targets; and (iii) the inputs and assumptions underlying the discount rate utilized by Morgan Stanley.

28.     Regarding Morgan Stanley's Precedent Premia Analysis, the Proxy fails to disclose: (i) the transactions observed by Morgan Stanley; and (ii) the premiums paid in the transactions observed by Morgan Stanley.

<u>Background of the Proposed Merger</u>

29.     The Proxy fails to disclose the timing and details of the prior services Morgan Stanley provided to Welbilt and its affiliates.

30.     The Proxy fails to disclose whether Welbilt executed any non-disclosure

agreements that contained don't ask, don't waive provisions.

## COUNT I

### Claim Against the Individual Defendants and Welbilt for Violation of Section 14(a) of the Exchange Act and Rule 14a-9

31.     Plaintiff repeats and realleges the above-referenced allegations as if fully set forth herein.

32.     The Individual Defendants disseminated the false and misleading Proxy, which contained statements that, in violation of Section 14(a) of the Exchange Act and Rule 14a-9, in light of the circumstances under which they were made, failed to state material facts necessary to make the statements therein not materially false or misleading.

33.     Welbilt is liable as the issuer of these statements.

34.     The Proxy was prepared, reviewed, and/or disseminated by the Individual Defendants.  By virtue of their positions within the Company, the Individual Defendants were aware of this information and their duty to disclose this information in the Proxy.

35.     The Individual Defendants were at least negligent in filing the Proxy with these materially false and misleading statements.

36.     The omissions and false and misleading statements in the Proxy are material in that a reasonable stockholder will consider them important in deciding how to vote on the Proposed Merger.

37.     A reasonable investor will view a full and accurate disclosure as significantly altering the total mix of information made available in the Proxy and in other information reasonably available to stockholders.

38.     The Proxy is an essential link in causing plaintiff to approve the Proposed Merger.

39.     Accordingly, defendants violated Section 14(a) of the Exchange Act and Rule 14a-

9.

40.     Plaintiff is threatened with irreparable harm.

## COUNT II

**Claim Against the Individual Defendants for Violation of Section 20(a) of the Exchange Act**

41.     Plaintiff repeats and realleges the above-referenced allegations as if fully set forth herein.

42.     The Individual Defendants acted as controlling persons of Welbilt within the meaning of Section 20(a) of the Exchange Act as alleged herein.

43.     Due to their positions as officers and/or directors of Welbilt and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Proxy, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that plaintiff contends are false and misleading.

44.     Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy alleged by plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause them to be corrected.

45.     Each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control and influence the particular transactions giving rise to the violations as alleged herein, and exercised the same.

46.     The Proxy contains the unanimous recommendation of the Individual Defendants to approve the Proposed Merger.  They were thus directly involved in the making of the Proxy.

47.     Accordingly, the Individual Defendants violated Section 20(a) of the Exchange

Act.

48.     The Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) of the Exchange Act and Rule 14a-9, by their acts and omissions as alleged herein.

49.     These defendants are liable pursuant to Section 20(a) of the Exchange Act.

50.     Plaintiff is threatened with irreparable harm.

## PRAYER FOR RELIEF

**WHEREFORE**, plaintiff prays for judgment and relief against defendants as follows:

A.     Preliminarily and permanently enjoining defendants and all persons acting in concert with them from consummating the Proposed Merger;

B.     In the event defendants consummate the Proposed Merger, rescinding it and setting it aside or awarding rescissory damages;

C.     Directing the Individual Defendants to disseminate a Proxy that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

D.     Declaring that defendants violated Sections 14(a) and/or 20(a) of the Exchange Act, as well as Rule 14a-9 promulgated thereunder;

E.     Awarding plaintiff the costs of this action, including reasonable allowance for attorneys' and experts' fees; and

F.     Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff requests a trial by jury on all issues so triable.

Dated:  September 10, 2021

**GRABAR LAW OFFICE**

By: _____

Joshua H. Grabar (#82525)
One Liberty Place
1650 Market Street, Suite 3600
Philadelphia, PA 19103
267-507-6085
jgrabar@grabarlaw.com

*Counsel for Plaintiff*